# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

NO. 5:07-CR-00159-D-1
NO. 5:08-CV-00594-D

| | |
|---|---|
| KENNETH FULLER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

This cause comes before the court upon Petitioner Kenneth Fuller's pro se motion (DE-22) under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("motion to vacate"). Respondent United States moved to dismiss Fuller's motion to vacate (DE-26), but the Court denied the motion to dismiss (DE-35), appointed counsel for Fuller (DE-40), and directed the undersigned to conduct an evidentiary hearing on Fuller's claim of ineffective assistance of counsel. (DE-40). The evidentiary hearing was held on February 14, 2012 (DE-62), and Fuller's motion to vacate is therefore ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a memorandum and recommendation. For the following reasons, it is hereby RECOMMENDED that Fuller's motion to vacate (DE-22) be DENIED.

## I. BACKGROUND

Fuller pled guilty to one count of possession with intent to distribute more than five

1

hundred grams of cocaine and was sentenced on December 5, 2007 to sixty-three months' imprisonment. (DE-13). The Court subsequently granted the government's motion to reduce his sentence and shortened his imprisonment to fifty-seven months. (DE-21). On December 3, 2008, Fuller filed his motion to vacate the judgment pursuant to 28 U.S.C. § 2255, alleging his trial attorney, Assistant Federal Public Defender Devon Donahue, failed to file a notice of appeal, despite his unambiguous instructions for her to do so. (DE-22).

At the direction of the Court, Ms. Donahue filed an affidavit regarding Fuller's claim that she failed to file a notice of appeal. Her affidavit states as follows:

> Regarding the allegation that Mr. Fuller told me . . . to appeal his sentence or conviction, Mr. Fuller and I discussed his opportunity to appeal on two separate occasions. We discussed it for the first time upon the conclusion of his sentencing hearing. At that time Mr. Fuller said he did not want to appeal his sentence. He did ask me whether he could seek a "reconsideration" from the sentencing judge. I told him that I was not aware of a basis to seek reconsideration, but told him that I would research the matter. After conducting my research, I visited with Mr. Fuller at the Franklin County Jail, where he was being hel[d] awaiting designation, and I told him that I did not think there were any issues that warranted reconsideration. I again asked him if he wanted to appeal his sentence and he told me very specifically to "not worry about that" because he had learned some information regarding a homicide investigation. He shared the information with me, and after discussing the matter further, I told him that I believed he stood an excellent chance of seeking a reduced sentence pursuant to Federal Rule of Procedure 35 (Rule 35) if he shared his information with investigators. I further explained that this route, versus an appeal, would more likely lead to a reduced sentence, and he agreed. Upon leaving the jail that day, I immediately contacted the homicide detectives handling the case Mr. Fuller discussed with me. They indicated to me that they were very interested in meeting with Mr. Fuller and we set a meeting up that week. The homicide detectives were very pleased with Mr. Fuller's cooperation, and they were able to make multiple arrests because of his cooperation. Following Mr. Fuller's cooperation, I successfully pursued a Rule 35 reduction for him. This Court reduced Mr. Fuller's sentence by six months. Mr. Fuller was very unhappy with his ultimate sentence. He felt the cooperation he provided warranted a much larger reduction. He filed his Motion to Vacate after this disappointing turn of events.

(DE-37).

2

The undersigned held an evidentiary hearing on February 14, 2012. (DE-62). At the evidentiary hearing, Fuller testified that Ms. Donahue met with him immediately following his sentencing hearing in December of 2007. They were both disappointed that the Court had chosen to impose consecutive sentences, rather than the concurrent sentence contemplated by the plea agreement and for which Ms. Donahue had argued. (DE-66, T.pp.15-16). Until that point, Fuller had been satisfied with Ms. Donahue's representation "because [he] thought [concurrent sentencing] was going to happen." He testified: "I—you know, I trusted her. She was my attorney." (T.p.16). Fuller told Ms. Donahue he wanted to appeal. (T.p.17). Fuller could not remember Ms. Donahue's precise response; she said "[s]omething about reconsideration or something like that or whatever. But it was, you know, just, like, that she would get back with me." (T.p.18).

Ms. Donahue met with Fuller a few days later at the Franklin County jail in Louisburg. (T.pp.19, 22). At that time, Fuller told her about information he knew regarding an unsolved murder case in Durham. (T.p.19). Ms. Donahue told Fuller that she believed this information could help him get a reduced sentence, and "that would be a . . . better solution, opposed to appealing the sentence." (T.p.20). Fuller "told her [he] still wanted to appeal the sentence." (T.p.20). Fuller testified that Ms. Donahue made no response. The "last [he] remember[ed] her saying was she was going to get in contact with Durham homicide." (T.p.20). Ms. Donahue shortly thereafter arranged for Fuller to meet with Durham homicide detectives. (T.pp.20-23). The information Fuller shared ultimately resulted in a successful Rule 35 reduction of his sentence. (T.p.23).

According to Fuller, he first learned in October of 2008 that no notice of appeal had been

3

filed. (T.p.24). Although Ms. Donahue wrote to Fuller regarding the Rule 35 motion, she did not discuss an appeal, and Fuller never asked her about one. (T.pp.25-26). He explained that he never wrote to her regarding an appeal because he "thought that once she did something and got some information back that she would get in contact with [him]." (T.p.25).

During cross-examination, Fuller agreed that he read over his plea agreement with Ms. Donahue prior to signing it. (T.p.31). He did not remember the provision in his plea agreement in which he agreed to waive or dismiss any appeal of his sentence. (T.p.31). Fuller recalled Ms. Donahue arguing in favor of a concurrent sentence at his sentencing hearing, and he agreed that he was "happy with her up until the point that Judge Dever announced his sentence." (T.p.32). After sentencing, Fuller "thought she lied to [him]." (T.p.33).

Devon Donahue testified that she thoroughly reviewed and explained the entire plea agreement to Fuller before he signed it. (T.pp.41-42). Fuller expressed no "problems with [her] representation of him" and Ms. Donahue felt "like [they] had a good [working] relationship and everything was going well." (T.p.42). At Fuller's sentencing hearing, both Ms. Donahue and the attorney for the government argued in favor of the stipulation contained in the plea agreement that Fuller's sentences for his revocation and conviction would run concurrently. (T.pp.42-43). However, the sentencing judge "was just not willing to . . . . run those sentences concurrently." (T.p.43).

Ms. Donahue met with Fuller immediately after the sentencing hearing. She stated "it was an emotional hearing because it was hard-fought and there were a lot of issues" and that "[n]either of [them] came out particularly thrilled about the sentence." (T.pp.43-44). They "talked a little bit" and "specifically talked about appealing." (T.p.44). Fuller "said he did not want to appeal,

4

but he did ask [her] to look into whether or not [the sentencing judge] could just simply reconsider the sentence without the appellate process." (T.p.44). Ms. Donahue told him she would "look into it and . . . [they would] discuss this again." (T.p.44).

Ms. Donahue testified that her normal practice is to discuss an appeal with her clients following sentencing:

> After a sentencing hearing, I . . . discuss with my client whether or not they want to appeal. And even if there's a plea agreement – and I tell this to them when we're going through the plea agreement.
> I say these are the circumstances under which the–the plea agreement—you're—you're agreeing you can appeal and the circumstances under which you can't appeal. But if in the end, even if I tell you I don't think there's a legitimate issue, if you want me to file notice of appeal, I'll file it. And then somebody in my office will represent you on that appeal.
> So that – that's a standard practice for me. We discuss it – like I said, at that moment, after the heat of the sentencing hearing, he said he did not want to appeal, but asked me to look into another mechanism for reconsideration.

(T.pp.44-45).

When Ms. Donahue met with Fuller the second time following his sentencing, she was prepared to "explain to him [she] didn't think there was another mechanism other than appealing" his sentence. (T.p.45). She testified:

> So I went into this meeting figuring we were going to discuss going ahead with the appellate process because that was really the only -- the only other way to – to go forward and to have his sentence reconsidered, short of, you know, mathematical error or something unusual.
> So that was the discussion I was prepared to have with him. When I went into the jail and explained to him I didn't really see any other mechanism and that I thought the appellate process would be the best route, he said –and I – I remember this very clearly because here I am going into this meeting thinking we're going to have one discussion and he – he really just sort of quickly brushed it off and said, "Don't worry about that. I've got something I want to talk to you about."
> So he said that he had learned information while he was there. . . . And just from that initial discussion, it sounded to me like a Rule 35 was very much something that we could potentially shoot for. It seemed to me like it was information that authorities and the government would value.
> I left that meeting – again, he said he didn't want to appeal it, but he

5

> definitely wanted to pursue the Rule 35. I agreed that was definitely the best route to get his sentencing cut.

(T.pp.45-46).

At the Rule 35 hearing, Ms. Donahue gave a "very impassioned argument" and "felt strongly it was going well" but was "extremely disappointed" when the sentencing judge reduced the sentence by only six months. (T.p.48). Ms. Donahue "relayed the reduction to Mr. Fuller, and [she] kn[e]w he was very disappointed." (T.p.48). Ms. Donahue stated that Fuller "never had any inquiries about any appeal because he never asked [her] to file any appeal and [she] never did file an appeal." (T.p.49). If Fuller had asked her to file an appeal, Ms. Donahue said she would have

> file[d] notice of appeal. And whenever a client asks me to file a notice of appeal – or even if they have a family member ask me, which I don't think technically is them requesting it, I like to follow up with that person.
> But I tell my assistant to file the notice of appeal. It's a phone call, so it's not even like I have to remember it or anything or write it down. It's just I call and follow up on the file with the notice of the appeal.

(T.p.49).

## II. <u>LEGAL STANDARDS</u>

### A. <u>28 U.S.C. § 2255</u>

Under section 2255, Title 28 of the United States Code, a petitioner may obtain relief from his sentence if he can show that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). The burden is on the petitioner to establish his claim to relief by a preponderance of the evidence. *See, e.g.*, <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . .");

Toribio-Ascencio v. United States, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 U.S. Dist. LEXIS 113549 at *5 (E.D.N.C. Oct. 25, 2010) ("In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence.").

B.  **Effect of Petitioner's Guilty Plea**

A valid guilty plea constitutes admission of the material elements of the crime. McCarthy v. United States, 394 U.S. 459, 466 (1969). The sworn representations made by a criminal defendant at plea proceedings "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Furthermore, a guilty plea normally waives any claim based on non-jurisdictional errors occurring prior to the plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973). In *Tollett*, the Supreme Court concluded that an intelligent and voluntary plea of guilty generally bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant pleaded guilty. The Supreme Court observed that "[t]he focus of federal habeas inquiry is the nature of [defense counsel's] advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Id.* at 266-67. Thus, in a collateral attack, a petitioner may only challenge the voluntary and intelligent character of a plea, such as by demonstrating that he received ineffective assistance of counsel. *Id.*

C.  **Ineffective Assistance of Counsel**

Fuller asserts his counsel was constitutionally deficient. To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.* at 688. The reviewing court must be "highly

7

deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Concerning the second prong, a petitioner must show that he was prejudiced by the ineffective assistance. *Id.* In the context of a guilty plea, a petitioner must demonstrate he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court held that the *Strickland* test applies to claims, like Fuller's, that counsel was constitutionally ineffective for failing to file a notice of appeal. *See id.* at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.") (citing Rodriquez v. United States, 395 U.S. 327 (1969)).

### III. ANALYSIS

Fuller contends his counsel failed to file a notice of appeal, thereby rendering constitutionally deficient performance. Fuller also asserts the government breached the plea agreement because the district court sentenced him to consecutive sentences rather than ordering his sentences to run concurrently. He contends his counsel was ineffective in advising him to accept the plea agreement and in failing to argue more strenuously for a reduced sentence. These arguments are addressed in turn.

#### A. Notice of Appeal

Fuller contends Ms. Donahue failed to file a notice of appeal after he specifically instructed

8

Case 5:07-cr-00159-D   Document 67   Filed 03/14/12   Page 8 of 14

her to do so. Recognizing that Ms. Donahue vigorously disputes his assertion, Fuller argues that his version of events is more credible because he had "nothing to lose" by filing a notice of appeal.

After hearing the testimony of the witnesses and observing their demeanor, the undersigned finds that Fuller's claim that he specifically instructed Ms. Donahue to file an appeal lacks credibility. Weighing all the testimony and evidence, the undersigned finds that the version of events as Ms. Donahue presented them to be more plausible. Ms. Donahue testified in detail regarding the circumstances of Fuller's sentencing and subsequent reduction in sentence. Ms. Donahue's testimony was specific, direct and emphatic on Fuller's instructions to her regarding an appeal. She noted they discussed an appeal on two occasions. The first occasion arose immediately following his sentencing hearing. Fuller told Ms. Donahue he did not want to appeal his sentence, but asked whether he could seek "reconsideration" from the sentencing judge. Ms. Donahue informed him that although she was unaware of any basis for reconsideration, she would nevertheless research the issue. When Ms. Donahue met with Fuller again a few days later, he told her to "not worry about" appealing his sentence, because he had learned information he believed would be useful in obtaining a Rule 35 reduction of sentence. Ms. Donahue told Fuller that she believed his chances for obtaining a sentence reduction were excellent, and further explained that "this route, versus an appeal, would more likely lead to a reduced sentence." Fuller agreed. And indeed, the district court reduced his sentence, albeit by less than what Fuller had hoped for.

Ms. Donahue's unequivocal testimony detailing her version of events is highly credible. Moreover, the undisputed chain of events in this case--Fuller's cooperation with law enforcement, the government's motion for a Rule 35 sentence reduction, the district court's decision to reduce

9

his sentence by only six months--supports Ms. Donahue's explanation that Fuller opted to pursue a Rule 35 reduction instead of an appeal and later regretted his decision when the Rule 35 reduction proved unsatisfactory. Notably, Fuller could not recall Ms. Donahue's response to his alleged instructions to her to file an appeal. According to Fuller, when he spoke of an appeal at their first meeting, Ms. Donahue said "something about reconsideration or something like that or whatever." At their second meeting, Fuller claims she gave no response when he asked her to file an appeal. Ms. Donahue's alleged lack of response at their second meeting and Fuller's inability to recall her reply at their first meeting further indicate that he in fact never directed her to file an appeal. Fuller's disappointment with his ultimate sentence, combined with the benefit of hindsight, has likely clouded his recall of the instructions he gave Ms. Donahue regarding an appeal. And while Fuller contends he had nothing to lose by filing a notice of appeal, the same can be said of Ms. Donahue. If Fuller had instructed her to file a notice of appeal, Ms. Donahue, an experienced trial attorney with the Federal Public Defender's Office, would have had no reason to neglect her client's directions. She testified it was her standard practice to discuss an appeal with her clients and to file a notice of appeal if directed to do so, even if she believed her client had little likelihood of success. She also stated it would have been a simple matter to file an appeal, requiring only "a phone call" to her assistant. The undersigned therefore finds that Fuller did not specifically instruct Ms. Donahue to file an appeal. However, this does not end the Court's inquiry.

Where, as here, a criminal defendant has not specifically instructed his attorney to file an appeal, "counsel is under a professional obligation to 'consult' with the defendant regarding that fundamental decision, unless the circumstances demonstrate that consultation is unnecessary." Frazer v. South Carolina, 430 F.3d 696, 707 (4th Cir. 2005) (citing Flores-Ortega, 528 U.S. at

10

478-79).

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Flores-Ortega, 528 U.S. at 480. In Flores-Ortega, the Supreme Court emphasized that it "employ[ed] the term 'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478.

In this case, there is no dispute that Ms. Donahue consulted with Fuller regarding an appeal. Both Fuller and Ms. Donahue testified that they twice discussed the possibility of an appeal. Ms. Donahue testified that it was her standard practice to discuss the possibility of an appeal with her clients as early as during negotiations of a plea agreement, and again immediately following a sentencing hearing. Fuller and Ms. Donahue only disagreed on whether he instructed her to file a notice of appeal. Having already resolved this factual dispute, the undersigned is satisfied that Ms. Donahue fulfilled her constitutional duty to consult with Fuller.

"If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instruction to appeal." Hudson v. Hunt, 235 F.3d 892, 896 (4th Cir. 2000). Evaluating the testimony and evidence in its entirety, the undersigned finds that Fuller did not instruct Ms. Donahue to file a notice of appeal. He therefore fails to state a claim for ineffective assistance of counsel based on his attorney's failure to file a notice of appeal. Accordingly, it is RECOMMENDED that Fuller's motion to vacate be DENIED as to his claim of ineffective assistance of counsel based on the failure to file a notice of appeal.

**B. Plea Agreement**

Fuller asserts the government breached his plea agreement in that he did not receive a concurrent sentence as contemplated in his plea agreement. He moreover contends Ms. Donahue was ineffective in advising him to accept the plea agreement, because he did not receive the concurrent sentence he expected. He argues his plea agreement was therefore not voluntary. Fuller asserts he should have received a lesser sentence based on his extensive cooperation with law enforcement. The undersigned finds no merit to these contentions.

Fuller's plea agreement plainly states that the parties' positions as to the sentencing factors "are not binding on the Court in its application of the advisory Guideline range[.]" (DE-9, p.7). The agreement further provides that "the Court will take into account, but is not bound by, the applicable United States Sentencing Guidelines, that the sentence has not yet been determined by the Court, that any estimate of the sentence received from any source is not a promise, and that even if a sentence up to the statutory maximum is imposed, the Defendant may not withdraw the plea of guilty." (DE-9, pp.5-6). Both Fuller and Ms. Donahue testified that they reviewed the entire plea agreement together before Fuller signed it. Moreover, at Fuller's Rule 11 hearing, Chief Judge Dever expressly advised Fuller that the Court was

> obligated to examine any . . . plea agreement carefully to be sure that the agreement conforms with the objectives of sentencing, including imposing a sentence within the parameters of your statute of conviction that is appropriate to the seriousness of your actual offense behavior and your past criminal conduct, if any. Such behavior and conduct will be evaluated by the court after the probation office prepares a detailed pre-sentence report. Should you enter into a plea agreement with the government, you should realize the court is not a party to the agreement. Such agreements are negotiated solely between you, your lawyer and the lawyer for the government.
> You are advised any stipulations contained in your plea agreement are not binding on the court for determining your sentence. Rather, the court will make an independent determination as to your sentence after applying all the sentencing

12

factors to your case.

A plea of guilty has the following additional consequences . . . . [T]he court may impose the same punishment as if you had pleaded not guilty and had been convicted by a jury. Third, if you are on probation or parole in another case in this or another court, by pleading guilty here your probation or parole may be revoked and you may be required to serve time in that case in addition to any sentence imposed on you by this court in this case. . . .

Regardless of the guideline ultimately found to be appropriate to your case, you may not withdraw a guilty plea tendered and conditionally accepted today. At the time of sentencing, however, the court, in its sole discretion, may cancel its conditional acceptance of your plea should the court determine that your plea fails to permit the imposition of an appropriate sentence. If conditional acceptance of your plea is canceled for such reason, your case will be set for trial immediately or at the court's ensuing term.

(DE-65, T.pp.5-8)

The evidence of record clearly establishes that Fuller had ample notice that his plea agreement did not require the Court to impose concurrent sentences, and that he thoroughly reviewed the plea agreement with his attorney prior to signing the agreement. He therefore fails to show that the government breached the plea agreement, that his attorney failed to advise him about the plea agreement, or that his agreement was not voluntary. Moreover, Fuller presents no evidence to indicate that absent his counsel's alleged deficient performance, he would have not pleaded guilty "and would have insisted on going to trial." Hill, 474 U.S. at 59. On the contrary, Fuller testified he was fully satisfied with his counsel's performance until his sentence was announced. It was only at that point that Fuller felt that his counsel "lied to [him]." Yet it is abundantly clear that Ms. Donahue fully advised and argued strenuously on Fuller's behalf, resulting in a sentence at the low end of the advisory Guideline range (63 months, out of an advisory range of 60-71 months), and ultimately a reduction in his sentence, down to fifty-seven months. Fuller's dissatisfaction with the sentencing judge's discretionary decision to impose a concurrent sentence does not state a claim for ineffective assistance of counsel.

13

The undersigned finds that Fuller fails to state a claim for ineffective assistance of counsel and therefore RECOMMENDS that his motion to vacate be DENIED.

## IV. CONCLUSION

Because Fuller fails to show that his counsel's performance was objectively unreasonable or demonstrate that prejudice resulted from his counsel's alleged errors, the undersigned finds that he has not sustained his claim of ineffective assistance of counsel. The undersigned moreover finds that Fuller never instructed his attorney to file a notice of appeal. Thus, for the foregoing reasons, it is hereby RECOMMENDED that Fuller's motion to vacate (DE-22) be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, March 14, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE